UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
BENOIT BROOKENS,                        )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )   Civil Action No. 08-1612 (ESH)
                                        )
HILDA L. SOLIS, Secretary,[1]           )
United States Department of Labor,      )
                                        )
          Defendant.                    )
_____)


MEMORANDUM OPINION

          Plaintiff Benoit Brookens has again filed suit against the Secretary of the United States

Department of Labor ("DOL") for race and age discrimination and retaliation under Title VII, 42

U.S.C. § 2000e *et seq*., and under the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621 *et seq*.[2]  In a prior lawsuit before this Court, plaintiff raised claims of

discrimination and retaliation regarding three positions to which defendant failed to promote

him.  On October 21, 2008, this Court granted summary judgment in that case, and this ruling

was summarily affirmed.  *Brookens v. Chao*, No. 08-0086 (D.D.C. Oct. 21, 2008) ("*Brookens*

---

[1]       Hilda L. Solis, current Secretary of the United States Department of Labor, is substituted
for her predecessor.  Fed. R. Civ. P. 25(d).

[2]       Plaintiff also purports to bring this action under 42 U.S.C. § 1981.  However, as a federal
employee, plaintiff may not bring an employment discrimination claim pursuant to § 1981.
*Robinson v. Chao*, No. 05-5445, 2006 U.S. App. LEXIS 12550, at *3 (D.C. Cir. May 2, 2006);
*Prince v. Rice*, 453 F. Supp. 2d 14, 25-27 (D.D.C. 2006).

*I*"), *aff'd sub nom. Brookens v. Solis*, No. 08-5527 (D.C. Cir. May 8, 2009) (per curiam).[3]  In the instant suit, plaintiff complains about a number of other employment decisions, including denials of promotions, detail requests, desk audits, and a within-grade increase ("WGI") in pay.  This matter comes before the Court on defendant's Motion to Dismiss Complaint or in the Alternative for Summary Judgment and on plaintiff's Motion to Stay.  For the reasons set forth below, the Court will grant defendant's motions and deny plaintiff's motion.

## BACKGROUND

Plaintiff is an African-American male over age forty who holds law and graduate business degrees from Columbia University, New York, New York.  (Compl. ¶¶ 7, 8.)  He has previously practiced law and taught as an adjunct professor at the University of Virginia, Falls Church, Virginia.  (*Id.* ¶ 9.)  Starting in 1990, he was employed by the DOL as an International Economist in the Bureau of International Labor Affairs ("ILAB") at grade GS-12.  (*Id.* ¶¶ 10, 13.)

In February 2007, defendant posted vacancy announcement ILAB 07-068DE/M for a Chief of ILAB's Trade Policy and Negotiations Division.  (*Id.* ¶ 29.)  Plaintiff submitted an application for the position in March.  (*Id.* ¶ 30; Declaration of Ericka Witt, dated Jan. 5, 2009 ["First Witt Decl."] ¶ 14(b).)  That same month, he also requested a 60-day detail to the position, which was denied.  (Compl. ¶ 31.)  In April 2007, plaintiff was notified that he was not certified for the position because he failed to meet the time-in-grade requirement.  (*Id.* ¶ 32.)  Plaintiff, believing that he was qualified, initiated a formal complaint, but the vacancy announcement was

---

[3]     In *Brookens I*, this Court dismissed the suit at the outset, finding that defendant had set forth legitimate, nondiscriminatory reasons for its employment decisions, and plaintiff had failed to adduce evidence that could allow a reasonable trier of fact to conclude that those reasons were pretextual.

cancelled in May 2007.  (*Id.* ¶¶ 33-34.)   Around the same time, plaintiff requested a second

detail to the position and a desk audit, both of which were denied.[4]  (*Id.* ¶ 35-36.)

In July 2007, defendant re-posted the position for Chief of the Trade Policy and

Negotiations Division in vacancy announcement ILAB 07-157DE/M and listed additional

qualifications that had not been included in the prior vacancy announcement.  (*Id.* ¶¶ 37-38.)

Plaintiff was again determined to be unqualified for the position.  (*See* First Witt Decl. ¶ 15(d).)

Instead, Timothy Wedding, a white male whom plaintiff claims was less qualified in the area of

trade and policy negotiations and needed training by plaintiff and others to perform the duties of

the position, was selected for the vacancy.  (Compl. ¶¶ 41-42.)  In August 2007, prior to Mr.

Wedding's appointment, plaintiff's request for a detail as Acting Chief of the Trade Policy and

Negotiations Division was denied. (*Id.* ¶ 24(c).)  Plaintiff then filed a formal administrative

complaint alleging race and age discrimination and reprisal based on the DOL's determinations

that he was unqualified for the twice-advertised ILAB vacancy and the denial of his requests for

details to that position and a desk audit.[5]  (*Id.* ¶ 43; Declaration of Naomi Barry-Perez [Barry-

Perez Decl.] Attach. 1.)

In December 2007, Mr. Wedding, who by that time had been appointed Chief of the

Trade Policy and Negotiations Division, denied plaintiff's request for a desk audit and a WGI.

(Compl. ¶¶ 24(e), 46.)  Plaintiff thereafter requested reconsideration of the denial of his WGI,

---

[4]     According to defendant, "[d]esk audits are reviews of an employee's current
responsibilities to determine whether an employee is actually performing responsibilities at a
grade level higher than the current classification."  (Declaration of Gregory K. Schoepfle
[Schoepfle Decl.] ¶ 9.)

[5]     According to defendant, this administrative action was dismissed after plaintiff filed the
instant lawsuit.  (Mot. to Dismiss or for Summ. J. at 19.)

which was denied.  (*See* Schoepfle Decl. ¶ 11; Def.'s Ex. A, *Brookens v. Dep't of Labor*, MSPB

No. DC-531D-08-0302-I-1, at 3 (May 1, 2008).)  In March 2008, plaintiff filed a formal

administrative complaint of discrimination regarding the December 2007 denials of a desk audit

and WGI.  Both claims were dismissed as untimely, and the WGI claim was also dismissed

because plaintiff had elected to file an appeal with the Merit Systems Protection Board

("MSPB").  (Compl. ¶ 51; Barry-Perez Decl. ¶ 4.)  The MSPB affirmed the DOL's decision to

deny plaintiff's WGI and also found that plaintiff had failed to support his allegations of age

discrimination and reprisal, and thereafter, the Equal Employment Opportunity Commission

("EEOC") upheld the finding of no discrimination.[6]  (Def.'s Ex. A, *Brookens v. Dep't of Labor*,

MSPB No. DC-531D-08-0302-I-1 (May 1, 2008)); *Brookens v. Chao*, No. 0320080075, 2008

WL 4107416 (E.E.O.C. Aug. 19, 2008).

    In this case, in addition to alleging that these actions constituted age and race

discrimination, plaintiff also alleges that defendant's actions were in retaliation for his having

filed complaints with the EEOC, the MSPB, and this Court.[7]  (*See* Compl. ¶¶ 18-25.)  Before the

Court are defendant's motion to dismiss the complaint or in the alternative for summary

judgment, plaintiff's opposition, and defendant's reply, as well as plaintiff's motion to stay the

Court's ruling on defendant's summary judgment motion pending completion of discovery,

---

[6]    Plaintiff did not allege race discrimination before the MSPB.

[7]    In his complaint, which was filed on September 19, 2008, plaintiff also alleges that
defendant issued a proposal on September 5, 2008, to remove him from federal service in
retaliation for his prior EEO activity.  (Compl. ¶ 23.)  However, given that plaintiff filed his
complaint just 14 days after defendant's issuance of its proposal, plaintiff could not have
exhausted his administrative remedies prior to filing suit, a requirement for claims brought under
both Title VII and the ADEA.  *See Washington v. Washington Metro. Area Transit Auth.*, 160
F.3d 750, 752 (D.C. Cir. 1998).  Therefore, the Court cannot address this issue here.

defendant's opposition, and plaintiff's reply.  The issues before the Court, listed in the order in

which they will be addressed, are as follows:

> (1)    whether the DOL discriminated against plaintiff based on his race and/or age or
> retaliated against him based on his prior EEO activity when the agency denied his
> requests for details in March, May, and August 2007 and his requests for desk
> audits in May and December 2007;

> (2)    whether the DOL discriminated against plaintiff based on his race and/or age or
> retaliated against him based on his prior EEO activity when the agency failed to
> select him for the position of Chief of the Trade Policy and Negotiation Division
> in response to vacancy announcement ILAB 07-068DE/M or ILAB 07-157DE/M;
> and

> (3)    whether the DOL discriminated against plaintiff based on his race and/or age or
> retaliated against him based on his prior EEO activity when the agency denied his
> WGI in December 2007.

## ANALYSIS

## I.    LEGAL STANDARDS

### A.    Motion to Dismiss

A case must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim upon which relief can be granted if the complaint does not plead "enough facts to

state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  The allegations in plaintiff's complaint are presumed true at this stage and all reasonable

factual inferences must be construed in plaintiff's favor.  *Maljack Prods., Inc. v. Motion Picture*

*Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir. 1995).  However, "the court need not accept

inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the

complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  To survive a motion to

dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In this case, plaintiff is proceeding *pro se*. The Court is therefore mindful that "complaints or motions drafted by *pro se* plaintiffs are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Shankar v. ACS-GSI*, 258 Fed. Appx. 344, 345 (D.C. Cir. 2007) (quoting *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007)). Plaintiff, however, is a lawyer and an experienced litigant, having pursued the employment discrimination lawsuit in *Brookens I*, as well as numerous other lawsuits before this Court and the D.C. Circuit.[8]

### B.  Motion for Summary Judgment

A party is entitled to summary judgment if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering whether there is a triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. The party opposing a motion for summary judgment, however, "may not rely merely on allegations or

---

[8] *See, e.g.*, *Brookens v. White*, 836 F.2d 653 (D.C. Cir. 1987); *Brookens v. U.S.*, 627 F.2d 494 (D.C. Cir. 1980); *In re Brookens*, No. 04-145 (D.D.C. Mar. 9, 2004); *Brookens v. Local 12 AFGE, AFL-CIO*, No. 01-1366 (D.D.C. Mar. 28, 2002); *Brookens v. Binion*, No. 98-838 (D.D.C. Feb. 9, 1999), *rev'd*, No. 99-7030, 2000 U.S. App. LEXIS 2055 (D.C. Cir. Jan. 28, 2000); *Brookens v. Schultz*, No. 86-3452 (D.D.C. Oct. 9, 1992), *aff'd sub nom. Brookens v. Christopher*, No. 92-5458, 1993 U.S. App. LEXIS 21231 (D.C. Cir. June 8, 1993). In each of these cases, plaintiff proceeded *pro se*. Moreover, while plaintiff ultimately obtained counsel in *Brookens I*, he initially filed suit *pro se*.

denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine

issue for trial." Fed. R. Civ. P. 56(e)(2).  The non-moving party must do more than simply

"show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Moreover, "any factual assertions in

the movant's affidavits will be accepted as being true unless [the opposing party] submits his

own affidavits or other documentary evidence contradicting the assertion." *Neal v. Kelly,* 963

F.2d 453, 456 (D.C. Cir.1992) (quoting *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)).

### C.      Title VII and the ADEA

#### 1.      *Prima Facie* Case

To succeed on a claim of discrimination under Title VII and the ADEA, a plaintiff has

the initial burden of establishing a *prima facie* case of discrimination by showing that "(1) [he] is

a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the

unfavorable action gives rise to an inference of discrimination."  *Stella v. Mineta*, 284 F.3d 135,

145 (D.C. Cir. 2002); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973);

*Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004) (applying *McDonnell*

*Douglas* framework to ADEA claims).  A *prima facie* case of retaliation requires a plaintiff to

show that "(1) [he] engaged in statutorily protected activity; (2) [he] suffered an adverse

employment action; and (3) there is a causal connection between the two."  *Taylor v. Small*, 350

F.3d 1286, 1292 (D.C. Cir. 2003); *see also* 42 U.S.C. § 2000e-3(a).  Should plaintiff fail to make

out a *prima facie* case with respect to any claim, that claim must be dismissed.

Pursuant to this standard, to make out a *prima facie* case of either discrimination or

retaliation, plaintiff must show an adverse action, which is defined as "a significant change in

employment status, such as hiring, firing, failing to promote, reassignment with significantly

different responsibilities, or a decision causing significant change in benefits." *Douglas v. Preston*, 559 F.3d 549, 552 (D.C. Cir. 2009) (citation and internal quotation marks omitted). "An employee suffers an adverse employment action if he experiences materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)).  In most cases, a tangible employment action "inflicts direct economic harm." *Douglas*, 559 F.3d at 552 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)). However, where the alleged significant change in employment status is not obvious, "an employee must go the further step of demonstrating how the decision nonetheless caused such an objectively tangible harm," which requires a court "to consider whether the alleged harm is unduly speculative." *Id.* at 553.

For a retaliation claim, the concept of adverse action is broader than in the discrimination context and "can encompass harms unrelated to employment or the workplace 'so long as a reasonable employee would have found the challenged action materially adverse.'" *Rattigan v. Holder*, No. 04-2009, 2009 U.S. Dist. LEXIS 26495, at *27 (D.D.C. Mar. 30, 2009) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008) (citation and internal quotation marks omitted)).  To be materially adverse, the action must be one that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

###### 2.      Pretext

Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to produce evidence that the challenged action was taken for a legitimate, nondiscriminatory reason.  *See Holcomb v. Powell*, 433 F.3d 889, 896 (D.C. Cir. 2006).  Once a defendant has done so, the presumption of discrimination "simply drops out of the picture," and "the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason."  *Id.* at 896-97 (citations omitted).  "All of the evidence" may include (1) evidence establishing the plaintiff's *prima facie* case; (2) evidence attacking the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer.[9]  *Id.* at 897.

## II.    PLAINTIFF'S CLAIMS

Applying these standards, the Court will now turn to plaintiff's claims.  With respect to plaintiff's claims regarding the denials of a 60-day detail in March 2007 and then again in May 2007 and a detail in August 2007 and the denial of desk audits in May and December 2007, defendant argues that it is entitled to dismissal because these denials do not constitute an adverse action, or in the alternative, summary judgment should be entered because plaintiff has failed to rebut defendant's legitimate, nondiscriminatory reasons for these denials.

---

[9]      As cautioned by the D.C. Circuit in *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008), when reviewing a motion for summary judgment in a discrimination case, a district court need not – and should not – evaluate a plaintiff's *prima facie* showing where a defendant sets forth a legitimate, nondiscriminatory reason for its conduct.  *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  Instead, the court must look to whether the plaintiff has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer

With respect to plaintiff's claims regarding defendant's failure to promote him on two occasions to the Chief of Trade Policy and Negotiations Division, which is a GS-15 Supervisory International Economist position, and defendant's denial of a WGI in December 2007, defendant argues that it is entitled to summary judgment because plaintiff has failed to cast doubt on defendant's nondiscriminatory explanation that plaintiff lacked the necessary qualifications for a promotion to this position, and he could not qualify for a WGI due to his deficient performance rating.

In response, plaintiff essentially takes the position that the Court should stay ruling on the motion for summary judgment since he has not had the chance to take discovery and that he should be able to get statistical data as to defendant's policy and practices relating to "hiring, promotion, desk audits, step increases, grade increases, performance evaluation and firing practices." (Pl.'s Mot. to Stay at 2.) In his reply, plaintiff also argues that the allegations of his complaint are satisfactory since desk audits and details "fall in the Court's definition of adverse employment actions," (*see* Pl.'s Reply at 4), and that summary judgment should be denied on the grounds that he has satisfied the requirements of Fed. R. Civ. P. 56(f). (*Id.* at 3.) In particular, plaintiff asserts that he expects "that discovery will be able to disclose genuine issues of material fact" (*id.* at 2), and in particular, in his affidavit, he claims that discovery will reveal, *inter alia*, that he was the victim of discrimination and retaliation, that the reasons for the various actions by defendant are false, that plaintiff was qualified for the two positions, that he was treated less favorably than younger white employees, and that there is a history of race and age

---

intentionally discriminated against [the plaintiff]." *Id.* (citations omitted); *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (applying same principles to retaliation claims).

discrimination at the DOL/ILAB.  (*See* Affidavit of Benoit Brookens in Support of Motion to

Stay and Discovery [Brookens Aff.] ¶¶ 6-14.)

As discussed more fully herein, the Court is persuaded that defendant is entitled to

dismissal of the claims relating to the denials of the desk audits and the details and to summary

judgment on all claims on the grounds that plaintiff has offered no rebuttal to defendant's

legitimate, nondiscriminatory explanations for its actions nor is he entitled to Rule 56(f)

discovery.

### A.        Denial of Detail and Desk Audit Requests

In his reply, plaintiff claims, without explanation, that "a desk audit and detail fall in the

Court's definition of adverse employment action."  (Pl.'s Reply at 4.)  But in his complaint,

plaintiff alleges that a detail to the position of Trade Policy and Negotiations Division Chief

would have "provide[d] him training, experience and promotional or advancement opportunities"

and, likewise, that a desk audit would have "assess[ed] his competence and performance for

purposes of promotional or advancement opportunities."  (Compl. ¶ 16(e), (f).)

Even assuming the truth of these allegations, as one must at this stage, plaintiff's claims

as to the denial of desk audits and details do not constitute adverse employment actions, and

thus, he cannot establish a *prima facie* case for either discrimination or retaliation.  Faced with

similarly vague and speculative assertions, the D.C. Circuit has held that the denial of a detail

does not constitute an adverse action.  *See Maramark v. Spellings*, No. 06-5099, 2007 U.S. App.

LEXIS 22545, at *2 (D.C. Cir. Sept. 20, 2007) (denial of a five-month detail that might have

allowed plaintiff to secure a permanent position was "too speculative to constitute an objectively

tangible harm" (citation and internal quotation marks omitted)); *Stewart v. Evans*, 275 F.3d

1126, 1135 (D.C. Cir. 2002) (denial of "acting" designation cannot be considered an adverse

employment action because "this type of temporary designation is not one of the terms, conditions, or privileges of employment contemplated by Title VII"); *Taylor v. FDIC*, 132 F.3d 753, 764 (D.C. Cir. 1997) (repeated failure to designate plaintiffs as acting section chief when their superiors temporarily left the office is insufficient to constitute an adverse employment action); *see also Nichols v. Truscott*, 424 F. Supp. 2d 124, 136-37 (D.D.C. 2006) (the denial of requests for detail assignments and requests to serve as Acting Branch Chief did not constitute adverse employment action).  Similarly, the Fifth Circuit has found that the denial of a desk audit is "not an actionable 'adverse personnel action' under Title VII."  *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995); *see also Douglas*, 559 F.3d at 553 (department head's failure to recommend employee for a Presidential Rank Award did not constitute adverse employment action); *Edwards v. EPA*, 456 F. Supp. 2d 72, 86 (D.D.C. 2006) ("[T]o be adverse, the denial of a travel or training opportunity must have a discernible, as opposed to a speculative, effect on the terms, conditions, or privileges of one's employment.").

This result does not change under the more lenient standard set forth in *White* for retaliation claims.  For, as noted in *White*, the "anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  548 U.S. at 67. Here, plaintiff does not allege any injury or harm resulting from these denials, and whether any materially adverse consequences could have resulted from these denials is mere speculation.[10]

---

[10]     In fact, neither a detail nor a desk audit would have qualified plaintiff for the position of Chief of the Trade Policy and Negotiations Division, which he sought in March and July 2007. A temporary detail in March, May, or August 2007 or a desk audit in May or December 2007 simply would not have enabled plaintiff to meet the time-in-grade requirement under merit staffing procedures or the one-year specialized experience requirement under delegated examining procedures.  *See* Section II(B) *infra*.  Moreover, the first vacancy announcement (ILAB 07-068) was cancelled by defendant in April 2007, before plaintiff made either desk audit request, and the second vacancy announcement (ILAB 07-157) was filled prior to plaintiff's

*Sewell v. Chao*, 532 F. Supp. 2d 126, 137 (D.D.C. 2008) (denial of training and transfer to another department did not constitute adverse employment actions for purposes of a retaliation claim), *aff'd sub nom. Sewell v. Hugler*, No. 08-5079, 2009 U.S. App. LEXIS 4136 (D.C. Cir. Feb. 25, 2009) (per curiam).

Moreover, even if plaintiff could make out a *prima facie* case of discrimination or retaliation on the basis of the denials of details and desk audits, he has failed to rebut the legitimate reasons defendant has proffered for the denial of the details and the December 2007 desk audit.  Specifically, with respect to the details, Gregory K. Schoepfle, the Director of the Office of Trade and Labor Affairs in ILAB, states that after the retirement of the then Chief of the Trade Policy and Negotiations Division in December 2006, he designated his Deputy Director, Carlos Romero, a GS-15 Supervisory International Economist, to serve as acting chief of the division until the position could be permanently filled.  (Schoepfle Decl. ¶ 5.)  Thus, Mr. Romero concurrently served in both positions until the division chief position was filled in September 2007.  (*Id.*)  While Mr. Romero took a two-week vacation in August 2007, Mr. Schoepfle states that he, as office director, supervised the activities of the division during that time.  (*Id.* ¶ 8.)  Accordingly, because no detail opportunities were available when plaintiff made his requests, Mr. Schoepfle denied them.  (*Id.* ¶¶ 6-8.)  Plaintiff has offered no evidence to contradict these assertions or to otherwise raise an inference that the reasons offered by Mr. Schoepfle were pretextual.

---

second desk audit request.  (*See* First Witt Decl. ¶¶ 14(k), 16.)  Thus, neither desk audit request could have had any impact on plaintiff's consideration for the position in the first vacancy announcement, and the second request could not have impacted his consideration for the position in the second vacancy announcement.

Moreover, with respect to the December 2007 desk audit request, Mr. Wedding, plaintiff's supervisor at the time, indicates that plaintiff requested the desk audit the day after the denial of his WGI, which in turn was based on his most recent performance rating of "Minimally Satisfactory" and subsequent performance deficiencies.  (*See* Declaration of Timothy J. Wedding [Wedding Decl.] ¶¶ 5-6; Def.'s Ex. A, *Brookens v. Dep't of Labor*, MSPB No. DC-531D-08-0302-I-1, at 7 (May 1, 2008); *see also* First Witt Decl. ¶ 18.)  Mr. Wedding states that he denied the request because he "did not believe there had been any significant material changes to [plaintiff's] position" and because plaintiff "performed significantly less work than other International Economists."  (Wedding Decl. ¶ 7.)  "An employer is entitled to rely on his perception of an employee's work performance."  *Vasilevsky v. Reno*, 31 F. Supp. 2d 143, 149 (D.D.C. 1998).  Plaintiff has made no effort to dispute these assertions, even though they involve matters clearly within his knowledge.  Accordingly, even if plaintiff has established a *prima facie* case, defendant would still be entitled to summary judgment with respect to the denial of plaintiff's detail and December 2007 desk audit requests.

### B.  Failure to Promote

Plaintiff alleges that defendant's failure to select him for the Chief of the Trade Policy and Negotiations Division position posted first in vacancy announcement ILAB 07-068DE/M and again in vacancy announcement ILAB 07-157DE/M was the result of discrimination and retaliation for his protected activity.  In response, defendant moves for summary judgment on the basis that plaintiff was unqualified for both of these positions.

To support its claim, defendant submits the declaration of Ericka Witt, the Human Resources Specialist who was responsible for staffing both vacancy announcements.  Ms. Witt indicates that the position, which was for a GS-15 Supervisory International Economist, was

announced under delegated examining (DE) and merit staffing (MS) procedures.[11]  (First Witt

Decl. ¶¶  5, 6.)  She explains these procedures as follows:  Vacancies at Grade GS-12 and higher

that are in the competitive service and are advertised under MS appointment are subject to a

time-in-grade eligibility requirement pursuant to which the applicant must have 52 weeks of

experience at the next lower GS grade level, in this case GS-14.  (*Id.* ¶ 10.)  While vacancies

filled under DE procedures do not contain this time-in-grade requirement, applicants must meet

both basic requirements and specialized experience criteria listed in the Office of Personnel

Management's Individual Occupational Requirements.  (*Id.* ¶ 7.)  Specialized requirements for

GS-13 and higher positions in the GS-110 Economist series require candidates to possess one

year of specialized experience equivalent to the next lower grade level, in this case GS-14.  (*Id.* ¶

9.)

        Ms. Witt states that plaintiff applied under DE and MS procedures for vacancy

announcement ILAB 07-068 and under DE procedures for vacancy announcement ILAB 07-157.

(*Id.* ¶ 12.)  He was neither certified nor were his application materials forwarded to the selecting

official for consideration in either case.[12]  (*See id.* ¶¶ 14(d), (j), 15(d).)  With respect to the ILAB

---

[11]        Ms. Witt explains that "DE" refers to the type of appointment used for the general public
to apply to competitive service vacancies, while "MS" refers to the type of appointment by
which federal employees apply to vacancy announcements in either the competitive service or
excepted service.  (First Witt Decl. ¶¶ 7, 10.)  However, federal employees may apply under
either DE or MS procedures or both.  (*Id.* ¶ 11.)

[12]        Ms. Witt states that she received 12 applications for vacancy announcement ILAB 07-
068DE and six applications for vacancy announcement ILAB 07-068M.  (First Witt Decl. ¶
14(c).)  Based on her review, she certified three of the candidates under DE procedures and sent
their applications to the selecting official for consideration.  Two others met the cut-off score but
were not certified; four applicants did not meet the cut-off score; and three applicants, including
plaintiff, were deemed unqualified. (*Id.* ¶ 14(d).)  Ms. Witt does not indicate whether she
certified any applicants under MS procedures.

07-068 vacancy announcement, Ms. Witt indicates that she determined that plaintiff, a GS-12 employee, was not qualified under the DE appointment criteria because he did not possess one year of specialized experience equivalent to the GS-14 level.  (*Id.* ¶ 14(f)-(i).)  She explains that plaintiff's adjunct teaching experience, which he contends qualifies him "for higher level promotional and advancement opportunities" (Compl. ¶ 16(j)), was not sufficient to satisfy the specialized experience requirement.  (*Id.* ¶¶ 14(g), 15(g) and Attach 1.)  Similarly, Ms. Witt determined that plaintiff was unqualified for the ILAB 07-068 position under the MS appointment criteria because he did not have 52 weeks of time-in-grade experience at the GS-14 level.[13]  (*Id.* ¶ 14(j).)

Likewise, Ms. Witt determined that plaintiff was unqualified for the ILAB 07-157 position under the DE appointment criteria for the same reason that he was unqualified for the

---

She indicates that she received 12 applications for vacancy announcement ILAB 07-157DE.  Based on her review, she certified four of the candidates and sent their applications to the selecting official for consideration.  Eight applicants, including plaintiff, were deemed unqualified. (*Id.* ¶ 15(d).)

[13]     Plaintiff appears to suggest that defendant's ulterior motive for cancelling vacancy announcement ILAB 07-068 was to avoid hiring him.  (*See* Compl. ¶¶ 29-40.)  Defendant, however, has established that plaintiff was unqualified while several others applicants did meet the requirements of the position.  Moreover, defendant has provided a nondiscriminatory explanation for cancelling the vacancy, which plaintiff has failed to rebut.  Specifically, Mr. Schoepfle, who was the selecting official, indicates that after reviewing the Certificate of Eligibles for the position, which did not include plaintiff's name, he decided to cancel the posting with the intention of redescribing the skill and experience questions and thereafter reposting the position in order to attract a more diverse candidate pool.  (*See* Schoepfle Decl. ¶ 3.)  Summary judgment is appropriate when an employer cancels a vacancy for legitimate, nondiscriminatory reasons.  *See e.g.*, *Lester v. Natsios*, 290 F. Supp. 2d 11, 26 (D.D.C. 2003) (granting summary judgment when "defendant has convincingly explained that the vacancy was cancelled because the responsible manager wanted to recast the position differently, as to both its grade and function.  Plaintiff offers no rebuttal of this explanation, nor does she cast any doubt on its validity."); *Carter v. Pena*, 14 F. Supp. 2d 1, 6 (D.D.C. 1997) ("[P]laintiff failed to establish a prima facie case because no one was ever hired for the vacant position, and the vacancy was ultimately canceled."), *aff'd*, 1998 WL 315616, at *1 (D.C. Cir. Apr. 8, 1998).

ILAB 07-068 position - - he did not possess one year of specialized experience at the GS-14 level.  (*Id.* ¶¶ 15(e), (g)-(j).)  Ms. Witt indicates that Mr. Wedding "was selected from the certificate of eligibles for vacancy announcement ILAB 07-157M."  (*Id.* ¶ 16.)

This explanation more than satisfies the DOL's burden of articulating a legitimate, nondiscriminatory reason for its failure to promote plaintiff to the position in response to either of these vacancy announcements.  Accordingly, plaintiff was required to set forth evidence that "could allow a reasonable trier of fact to conclude that [defendant's] proffered reason[s] [were] a pretext for discrimination."  *Paquin v. Fed. Nat'l Mortgage Ass'n*, 119 F.3d 23, 27-28 (D.C. Cir. 1997).  Plaintiff, however, has made no attempt to rebut defendant's reason.  In his complaint, plaintiff alleges that Mr. Wedding had "lesser qualifications in 'trade policy and negotiations'" than plaintiff and that Mr. Wedding, in order "to perform the duties of the position, was in need of formal and informal training" by plaintiff and others.  (Compl. ¶¶ 41-42.)  However, plaintiff has not presented any evidence to refute defendant's showing that plaintiff did not satisfy the requirements for the position.[14]

Thus, because plaintiff "has produced no direct evidence of discriminatory [or retaliatory] animus by the decisionmaker and failed to produce any other evidence that discredits the underlying reason" for his failure to be selected, defendant is entitled to summary judgment on these claims.  *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008).

---

[14]       In *Brookens I*, this Court also found that plaintiff could not show pretext for defendant's failure to promote him to the position of a GS-14/GS-15 Deputy Director of the Office of International Relations, which was advertised under MS procedures, because he failed to meet the time-in-grade requirement for the job, since he did not possess the required 52 weeks of time-in-grade experience at the GS-14 level.  This finding was affirmed on appeal and is equally binding here as to the position advertised in the ILAB 07-068 vacancy announcement, since plaintiff also applied for that position under MS appointment criteria.

## C.      Denial of WGI

Plaintiff also alleges that he was subjected to discrimination based on his race and age and to retaliation based on his prior EEO activity when he was denied a WGI in December 2007. Defendant responds by arguing that plaintiff's WGI was properly withheld because his most recent rating of record at the time was "Minimally Satisfactory," which evidenced less than satisfactory performance.  (*See* Schoepfle Decl. ¶¶ 10-11; Wedding Decl. ¶ 5; First Witt Decl. ¶ 18.)

Plaintiff's overall "Minimally Satisfactory" performance rating was based on the "needs to improve" rating that he had received on element 4 of his performance standards.[15]  (Def.'s Ex. A, *Brookens v. Dep't of Labor*, MSPB No. DC-531D-08-0302-I-1, at 2 (May 1, 2008).)  According to Mr. Wedding, he denied plaintiff's WGI based on his deficient performance of element 4 as evidenced by his performance rating and on perceived subsequent performance deficiencies, including plaintiff's alleged continued unwillingness to accept additional assignments.  (*See id.*; Wedding Decl. ¶ 5.)  Mr. Schoepfle indicates that he upheld the denial of plaintiff's WGI on a similar basis.  (*See* Schoepfle Decl. ¶ 11 (stating that he upheld the denial of plaintiff's WGI "because he failed to achieve at least 'Meets' performance in a critical element of his performance evaluation plan")).

---

[15]      A rating of "Minimally Satisfactory" indicates that the employee "[n]eed[s] to improve performance for one or more elements."  (*See* Schoepfle Decl., Attach. 1.)  Element 4 was:

> Takes on assignments given, and assumes other responsibilities as work schedule permits and with supervisor's approval.  Otherwise works cooperatively and effectively with colleagues in ILAB and in the broader community of stakeholders to promote the mission and strategic objectives of the Bureau.

(Def.'s Ex. A, *Brookens v. Dep't of Labor*, MSPB No. DC-531D-08-0302-I-1, at 2 (May 1, 2008).)

Pursuant to regulations governing WGIs:

> An employee paid at less than the maximum rate of the grade of his or her position shall earn advancement in pay to the next higher step of the grade or the next higher rate within the grade . . . upon meeting the following . . . requirements established by law:
>
> (a)  The employee's performance must be at an acceptable level of competence . . . . To be determined at an acceptable level of competence, the employee's most recent rating of record . . . shall be at least Level 3 ("Fully Successful" or equivalent).

5 C.F.R. § 531.404(a); *see also* 5 U.S.C. § 5335(a)(B) (providing for periodic within grade step increases for federal employees provided that "the work of the employee is of an acceptable level of competence as determined by the head of the agency").  Accordingly, because plaintiff was found not to be performing at an acceptable level of competence, defendant claims that his WGI was properly denied.

By articulating a legitimate nondiscriminatory reason for its denial of plaintiff's WGI, defendant has satisfied its burden.  Once again, however, plaintiff makes no attempt to refute defendant's rationale.  Instead, he claims that he needs discovery in order to respond.  This claim is especially hollow with respect to the denial of his WGI.  This issue was fully litigated before the MSPB, where plaintiff and defendant, both of whom were represented by counsel, introduced evidence.  (*See* Def.'s Ex. A, *Brookens v. Dep't of Labor*, MSPB No. DC-531D-08-0302-I-1, at 5-7, 11-12 (May 1, 2008) (rejecting plaintiff's claim of discrimination and retaliation with respect to the WGI based on a record that included testimony by plaintiff and other DOL employees and documentary evidence).)  Given these circumstances, plaintiff's refrain that he needs discovery before he can offer any rebuttal to defendant's evidence cannot be sustained.  Defendant, therefore, is entitled to summary judgment on this claim.

**D.      Rule 56(f) Request for Discovery**

As he did in *Brookens I*, plaintiff attempts to stave off summary judgment by invoking Rule 56(f), and he also moves to stay the proceeding on the ground that he needs discovery to obtain "statistical data as to Defendant's hiring, promotion, desk audits, step increases, grade increases, performance evaluation and firing practices."  (Pl.'s Mot. to Stay at 2; *see also* Brookens Aff. ¶ 5.)  In addition, plaintiff avers that discovery will enable him to prove his case by revealing discrimination and retaliation in the DOL's treatment of plaintiff, as well as the lack of black supervisors and professionals and a history of discrimination in ILAB.[16]  (*See* Brookens Aff. ¶¶ 6-14.)

While summary judgment ordinarily "is proper only after the plaintiff has been given adequate time for discovery," *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988), under Rule 56(f), a party opposing a summary judgment motion must "show[] by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition."  In this regard, the opponent of summary judgment must provide the "requisite specificity" to justify his request for discovery.  *See Brookens v. Solis*, No. 08-5527 (D.C. Cir. May 8, 2009) (citing

---

[16]      Plaintiff also points to various "unresolved factual discrepancies," which he claims could be resolved through discovery.  The alleged discrepancies involve (1) a Certificate of Eligibles pursuant to which plaintiff was deemed eligible in July 2004 for a GS-14 position as a policy analyst with another federal agency; (2) the selection of Anne Zollner, "a non-economist, younger white female" as the successor to Timothy Wedding as Chief of the Trade Policy and Negotiations Division; and (3) the promotion of Mr. Wedding, "a younger white male," to Deputy Director of the Office of Trade and Labor Affairs.  (Opp'n at 2.)  However, none of these personnel actions is at issue in this case.  Moreover, plaintiff did not apply for either of the two ILAB vacancies he mentions.  (*See* Declaration of Ericka C. Witt, dated April 1, 2009 ["Second Witt Decl.] ¶¶ 4-7.)  Although plaintiff does complain here about his failure to be considered or selected for the division chief position that Ms. Zollner obtained, his complaint concerns *earlier* vacancy announcements, and he does not allege that Ms. Zollner failed to meet the agency's requirements for the position.  Thus, these personnel actions are irrelevant.

*Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006) ("A party making a Rule 56(f) request must state[] concretely why additional discovery is needed to oppose a motion for summary judgment.") (citation and internal quotation marks omitted)); *Byrd v. EPA*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999) (party seeking discovery bears the burden of identifying the facts to be discovered that would create a triable issue and reasons why the party cannot acquire those facts without discovery to challenge a motion for summary judgment); *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989) (plaintiff must "state with sufficient particularity . . . why discovery [is] necessary).

Plaintiff has again failed to meet this standard despite having been told of the requirements of Rule 56(f) in *Brookens I* and having been reminded by the Court's *Fox/Neal* Order of January 6, 2009, of the need to provide evidence to contradict defendant's assertions in its affidavits.  As an initial matter, the lack of discovery has no relevance to defendant's arguments under Rule 12(b)(6).  And, as to defendant's summary judgment arguments, plaintiff fails to provide sufficient particularity to justify his request for discovery.  Instead, he presents conclusory assertions that amount to nothing more than a claim that he could prove his case if only he were permitted discovery.  Nor has he shown how the laundry list of statistical data that he seeks would undercut defendant's explanations for its actions.[17]  Moreover, the matters at

---

[17]    Plaintiff's reliance on *Fitzgerald v. Henderson*, 251 F.3d 345 (2d Cir. 2001), is unavailing.  In that case, the plaintiff sought recovery for discriminatory conduct that occurred outside the applicable limitations period under the "continuing violation theory," which, according to the district court, required plaintiff to show a "formal policy or that discrimination was 'widespread.'"  251 F.3d at 362.  In those circumstances, the Second Circuit held that "[f]aulting [plaintiff] for failure to make a showing of a formal policy - - or of other matters that would similarly be beyond her knowledge - - was incompatible with the court's denial of discovery."  *Id.*  In this case, however, there is no allegation that any of the discrete acts of discrimination alleged by plaintiff are untimely.  Thus, the continuing violation theory is irrelevant here.

issue involve matters that are within plaintiff's knowledge to dispute, so there is no excuse for his failure to offer any rebuttal to defendant's evidence.

For these reasons, there is nothing to suggest that plaintiff's vague request for discovery would result in his being able to create a triable issue of fact.  Therefore, the Court will deny plaintiff's motion for a stay and his Rule 56(f) request for discovery.

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion to dismiss complaint or in the alternative for summary judgment and will deny plaintiff's motion to stay.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   May 21, 2009